UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH HUTTON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No.  2:15-cv-2002-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from September 7, 2011, through the date of the final administrative decision.  (ECF No. 13.)  The Commissioner filed a cross-motion for summary judgment and opposition to plaintiff's motion for summary judgment.  (ECF No. 18.)  Plaintiff did not file a reply brief.

////

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 7, 9.)

1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on January 11, 1975; he has a high school education; he previously worked as a warehouse worker; and he last worked on September 6, 2011.[2]  (Administrative Transcript ("AT") 25, 36-3.)  Plaintiff applied for DIB on April 13, 2012, alleging that his disability began on September 7, 2011, and that he was disabled due to a prior brain injury, depression, anxiety attacks, a learning disability, digestive and bowel problems, back pain, and difficulties with focus and concentration.  (AT 74, 163, 167.)  After plaintiff's application was denied initially and on reconsideration, he requested a hearing before an administrative law judge ("ALJ"), which took place on March 4, 2014.  (AT 31-64.)  In a decision dated April 4, 2014, the ALJ found plaintiff not disabled.  (AT 16-26.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 17, 2015.  (AT 1-5.)  Thereafter, plaintiff filed this action in federal district court on September 22, 2015, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.  ISSUES PRESENTED

Plaintiff raises the following issues:  (1) whether the ALJ improperly discounted plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms stemming from his impairments; and (2) whether the ALJ improperly rejected the opinion of Nurse Practitioner Deborah Jamieson when determining plaintiff's residual functional capacity ("RFC").

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

    A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to disability benefits pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401, et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

determined that plaintiff meets the insured status requirements of the Act through December 31, 2016. (AT 18.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since September 7, 2011, the alleged onset date. (Id.) At step two, the ALJ determined that plaintiff had the following severe impairments: "depressive disorder, bipolar disorder, anxiety disorder, personality disorder, and a history of brain injury." (Id.) However, at step three, the ALJ determined that the plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 19.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to simple (defined in the Dictionary of Occupational Titles (DOT) as Specific Vocational Preparation (SVP) levels (SVP) [*sic*] 1 and 2), routine, and repetitive tasks.

(AT 21.)

At step four, the ALJ concluded that plaintiff is capable of performing his past relevant work as a warehouse worker given his RFC.[4] (AT 25.) Accordingly, the ALJ concluded that the plaintiff had not been under a disability from September 7, 2011, the alleged onset date, through the date of the decision. (Id.)

////
////
////
////

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[4] Because the ALJ determined, at step four of the sequential analysis, that plaintiff was capable of performing his past relevant work and thus was not disabled, he did not continue on to step five of the analysis.

4

B. <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

1. *Whether the ALJ Improperly Discounted Plaintiff's Testimony Regarding the Intensity, Persistence, and Limiting Effects of his Symptoms*

First, plaintiff argues that the ALJ erred by improperly discounting his testimony regarding the extent of the pain and limitations stemming from his impairments without providing clear and convincing reasons supported by substantial evidence for doing so.

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

<u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ."  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009) (quoting <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, [claimant's] daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'"  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir.

5

2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

Here, the ALJ found plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms stemming from his impairments to be not entirely credible. (AT 22.) The ALJ provided the following reasons for discounting plaintiff's testimony in such a manner:

> [T]he claimant's allegations of debilitating mental symptoms are not well supported by the mental health evidence of record. Despite his alleged symptoms, his mental functioning was relatively normal during the Mental Consultative Examination (CE) conducted on February 7, 2012. In addition, the evidence of record shows that he has received little specialized mental health treatment, such as psychotherapy, since the alleged disability onset date. This is inconsistent with the alleged severity of his mental symptoms and diminishes the credibility of those allegations. He also has not been hospitalized for psychiatric treatment since the alleged disability onset date. Moreover, his psychiatric medications are admittedly effective in reducing his mental symptoms.
>
> Overall, the record contains little medical evidence and reveals relatively infrequent trips to doctors and mental health professionals for the allegedly disabling symptoms, which shows that the claimant has not generally received the type of mental health treatment one would expect for a totally disabled individual.
>
> The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Despite his mental impairments, he is essentially independent in self-care. He can prepare simple meals, perform household chores, and do grocery shopping. He is able to make change at stores. He is able to use a computer and utilize social media. He is able to spend time with others weekly. He can go out alone and attend church. He also has the ability to drive a car.
>
> The claimant admitted that he received unemployment compensation during the relevant period at issue. Unemployment compensation required the claimant to certify that he was willing and able to engage in work activity, which is inconsistent with his allegation of disability.
>
> The claimant's brain injury happened in 1983, but he was able to work with this impairment for many years between 1983 and 2011.

> This fact indicates that this impairment was generally not debilitating.
>
> The record indicates that the claimant stopped working primarily due to a business-related layoff rather than the allegedly disabling impairments, which raises a question as to whether the claimant's impairments are as debilitating as he has alleged.
>
> During the hearing, the undersigned observed that the claimant was able to respond to questions and interact appropriately, which indicated some social functioning ability. Moreover, the undersigned observed that the claimant was able to follow closely and participate fully during the hearing, which indicated some concentration ability. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of mental problems on a day-to-day basis, the apparent lack of mental difficulties during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.
>
> The claimant has not alleged any ongoing side effects from the use of medications.

(AT 22-23 (citations to the record omitted)). In essence, the ALJ provided eight separate reasons for discounting plaintiff's testimony. However, plaintiff contests that the ALJ erred with regard to only two of those reasons, specifically, that plaintiff did not receive specialized mental health treatment, and that plaintiff's daily activities indicated that he had greater functional capacity than he alleged. Plaintiff in no way addresses in his briefing the ALJ's other reasons for discounting plaintiff's testimony, let alone asserts that the ALJ erred in providing those reasons in support of his adverse credibility determination. The court need not address an issue where the claimant "failed to argue [the] issue with any specificity in [his or her] briefing." Carmickle v. Comm'r, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Accordingly, the court finds plaintiff's argument that the ALJ failed to provide any clear and convincing reasons for discounting plaintiff's testimony to be without merit as plaintiff does not contest the large majority of the reasons the ALJ provided in support of that determination.

////

////

1    Moreover, even assuming, without deciding, that the two reasons plaintiff contests were
2 provided by the ALJ in error, many of the other reasons the ALJ provided were, by themselves,
3 clear and convincing reasons for discounting plaintiff's testimony that were supported by
4 substantial evidence from the record.

5    For instance, the ALJ properly determined that the fact that plaintiff obtained
6 unemployment compensation immediately at the onset of the alleged disability period, which
7 began the day after plaintiff testified he had been laid off from his most recent job, demonstrated
8 that plaintiff was willing and able to engage in work activity and was inconsistent with plaintiff's
9 allegations of disabling symptoms.  The Ninth Circuit Court of Appeals has held that a claimant's
10 receipt of unemployment benefits can constitute a reason in support of an ALJ's adverse
11 credibility determination.  Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (upholding
12 ALJ's adverse credibility determination where one of the reasons the ALJ provided in support of
13 that determination was that the claimant "received unemployment insurance benefits"); see also
14 Hasso v. Colvin, 617 F. App'x 780, 781 (9th Cir. 2015) (unpublished) (upholding adverse
15 credibility determination based in part on the claimant's "receipt of unemployment benefits").
16 Here, plaintiff testified that he filed for and received unemployment after he had been laid off
17 from his most recent job and was "ready, willing, and able to work" at the time he filed for those
18 benefits.  (AT 39.)  Accordingly, there is substantial evidence in the record to support the ALJ's
19 proper reasoning.

20    The ALJ also determined that plaintiff had been laid off from his most recent job for non-
21 medical reasons, which undermined plaintiff's claim that his impairments caused totally
22 debilitating symptoms.  Indeed, plaintiff testified at the hearing that he was laid off from his most
23 recent job on September 6, 2011, just one day prior to the alleged disability onset date, because
24 there was a lack of work for him to perform, and not for reasons related to plaintiff's
25 impairments.  (AT 38-39.)  Plaintiff testified further that he began to look for other work after he
26 had been laid off, and continued to interview for other jobs in the same field as the one he was
27 laid off from throughout 2012 and 2013.  (AT 40-41.)  The Ninth Circuit Court of Appeals has
28 held that it is proper for an ALJ to consider the fact that a claimant left work for non-medical

reasons when assessing credibility. Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (holding that leaving work for non-medical reasons is a proper factor in assessing credibility); see also Williams v. Colvin, 609 F. App'x 495, 496 (9th Cir. 2015) (unpublished ) ("The ALJ also permissibly relied on Claimant's own report that he had stopped working in 2007 not because of medical problems but, rather, because he was laid off."). Therefore, the ALJ's consideration here was an appropriate reason for discounting plaintiff's testimony that was supported by substantial evidence.

In addition, the ALJ noted that plaintiff had been able to work for many years despite his brain injury and the symptoms stemming from that impairment, which form the primary basis of plaintiff's claim of disability. In particular, the ALJ noted that while plaintiff incurred his brain injury in 1983, that condition had not prevented him from working consistently between 1993 and 2011. (AT 23 (citing AT 159-60).) This fact also constituted a clear and convincing reason for discounting plaintiff's testimony. See Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) (upholding adverse credibility determination where there existed substantial evidence in the record indicating that the claimant's "back problems had not prevented her from working" over the course of a number of years); Crosby v. Comm'r of Soc. Sec. Admin., 489 F. App'x 166, 168 (9th Cir. 2012) (unpublished) (upholding credibility determination based on the fact that the claimant's testimony that he suffered debilitating symptoms was inconsistent "with his work history showing that his longstanding conditions did not preclude work in the past").

The ALJ also highlighted plaintiff's report that his impairments improved while he was using his medications as a reason for discounting plaintiff's allegations of debilitating symptoms. A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). The record here provides substantial support for the ALJ's reasoning. For instance, the treating notes in the record show that after plaintiff began taking lithium in early 2013, he began to report that he was not experiencing anxiety attacks, felt calmer, and was less anxious. (AT 278.) Plaintiff similarly

reported that Lamictal was "controlling his symptoms appropriately" without side effects when he was given a particular dosage of that medication.  (AT 297.)  Accordingly, the ALJ properly relied on this additional reason for discounting plaintiff's testimony.

In short, the ALJ provided a multitude of clear and convincing reasons for discounting plaintiff's testimony regarding the extent of his symptoms that are all supported by substantial evidence in the record.[5]  Therefore, the ALJ did not err in rendering his adverse credibility determination.

### 2. *Whether the ALJ Erred in Rejecting the Opinion of Nurse Practitioner Jamieson*

Second, plaintiff contends that the ALJ erred in assigning little weight to the opinion of Nurse Practitioner Jamieson, who was plaintiff's primary treating source.  Plaintiff argues that the ALJ erred in not crediting Nurse Practitioner Jamieson's opinion that plaintiff had a poor ability to deal with work stress and maintain concentration.

Nurse practitioners are categorized as an "other source" under the applicable regulations, and are not entitled to the same level of deference as medical doctors and other "acceptable medical sources."  20 C.F.R. § 404.1513(a), (d); Molina, 674 F.3d at 1111.  Accordingly, an ALJ is only required to provide "germane" reasons supported by substantial evidence in the record in support of a decision to discount a nurse practitioner's opinion.  Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010).

Here, the ALJ assigned "little weight" to Nurse Practitioner Jamieson's opinion based on the following rationale:

> [S]he is not an acceptable medical source and lacks the medical proficiency to render a reliable opinion on the claimant's limitations.  In addition, the opinion is inconsistent with the general

---

[5] The ALJ also cited to two other reasons in support of his adverse credibility that plaintiff does not contest and that the court does not address above.  Specifically, the ALJ also determined that plaintiff's testimony was inconsistent with the objective medical evidence in the record and with the ALJ's own personal observations of plaintiff at the hearing.  (AT 22-23.)  Because the ALJ's other reasons in support of his determination that are addressed above constitute clear and convincing reasons for discounting plaintiff's testimony in and of themselves, the court declines to address these additional reasons provided by the ALJ.

>absence of evidence of specialized mental health treatment in the record. Moreover, the opinion is inconsistent with the relatively normal mental functioning that the claimant exhibited at the mental consultative examination conducted on February 7, 2012.

(AT 24.) This rationale provides at least one germane reason for discounting Nurse Practitioner Jamieson's opinion, specifically, the fact that Nurse Practitioner Jamieson's opinion is inconsistent with the objective medical findings regarding plaintiff's mental functioning observed and opined upon by Dr. Fetterman, an acceptable medical source, during plaintiff's February 7, 2012 consultative examination. The fact that the opinion of an "other source" conflicts with the medical findings and opinion of a physician or other "acceptable medical source" is a germane reason in support of discounting the opinion of the "other source." See, e.g., Turner, 613 F.3d at 1224 (upholding ALJ's decision to discount social worker's opinion that conflicted with the opinions and medical findings of plaintiff's treating physicians); Putman v. Colvin, 586 F. App'x 691, 693 (9th Cir. 2014) (unpublished) (holding that the ALJ properly discounted counselor's opinion on the basis that the opinions of the claimant's physicians conflicted with that opinion). Dr. Fetterman's examination findings and opinion provide substantial support for the ALJ's reasoning. Indeed, Dr. Fetterman, a psychologist, noted that plaintiff's mental function examination produced largely unremarkable results. (AT 241-44.) Moreover, Dr. Fetterman opined that plaintiff's mental impairments caused few, if any, limitations in all areas of mental functioning. (AT 244.) In particular, Dr. Fetterman noted that plaintiff had a "good ability" to handle workplace stress, only "mild" memory impairments, and a "good ability" to complete a normal workday or workweek without interruptions from his mental impairments. (Id.) These findings directly conflicted with the limitations Nurse Practitioner Jamieson opined. The ALJ was permitted to rely on this conflict to discount Nurse Practitioner Jamieson's opinion.

    Plaintiff appears to argue that the ALJ still erred in assessing Nurse Practitioner Jamieson's opinion because he also noted that Nurse Practitioner Jamieson was not an "acceptable medical source." However, even assuming that such an additional reason was improper, the fact that the ALJ provided at least one germane reason in support of his decision

means that any such error is harmless.[6]  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

V.   CONCLUSION

In sum, the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is GRANTED.

3. The Commissioner's final decision is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: January 6, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiff appears to also argue that the ALJ was also required to find that plaintiff would be off task 15 percent of the workday and adopt that finding into his RFC determination based on Nurse Practitioner Jamieson's opinion.  However, this argument is without merit because the ALJ properly discounted Nurse Practitioner Jamieson's opinion for the reasons discussed above.